Filed 9/30/22 In re Lacey T. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re LACEY T. et al., Persons Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>A.T.,<br><br>Defendant and Appellant. | F083998<br><br>(Super. Ct. Nos. JD142431-00, JD142432-00)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County. Susan M. Gill, Judge.

Paul A. Swiller, under appointment by the Court of Appeal, for Defendant and Appellant.

Margo A. Raison, County Counsel, and Judith M. Denny, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

Appellant A.T. (mother) is the mother of 14-year-old Lacey T. and 12-year-old Linda T. (collectively "the children"), who were the subjects of a dependency case. Mother challenges the juvenile court's order dismissing dependency with sole legal and physical custody to father at the disposition hearing. Mother contends the juvenile court erred when it conditioned mother's ability to have unsupervised visits with the children on the conclusion of criminal proceedings for the children's stepfather. Respondent, Kern County Department of Human Services (department), filed a letter brief taking no position on the issue. We conditionally reverse the juvenile court's visitation order and remand for correction, we otherwise affirm the juvenile court's disposition orders.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 2, 2021, the children were taken into protective custody as a result of mother's failure to protect the children from sexual abuse by their stepfather. Lacey, at age 13, disclosed to a school administrator that she had been sexually abused by her stepfather since she was seven years old. Lacey also reported that her stepfather also did "something" to Linda. The stepfather admitted to a police detective that he sexually abused Lacey, but he did not admit to sexually abusing Linda. Mother initially denied that she was aware of any sexual abuse, but she later admitted to finding out about the sexual abuse two months earlier. Mother claimed she was afraid to report the incident to police. The stepfather was arrested on multiple counts of sexual abuse of a child, false imprisonment, and kidnapping.

The children told the investigating social worker that they wished to live with their father if they could not return to mother's care. During a sexual assault response team (SART) exam, Lacey described stepfather's sexual abuse since she was 11 years old. The most recent incident occurred a few days prior when the stepfather touched her "private parts" over her clothes with his finger, and the only reason he stopped was due to mother approaching. Lacey did not tell mother about the most recent abuse because her great uncle had been kidnapped, and she did not want to add to her mother's stress.

2.

Lacey suggested that Linda should also participate in a SART exam. In a later interview, Lacey told the social worker that she told mother about the sexual abuse two months earlier. Mother began crying in response, and she told Lacey that she was going to find a way to stop the sexual abuse. Mother did not call the police, and Lacey did not feel safe when her stepfather was home.

Mother told the social worker that she did not know or understand why the stepfather was arrested. She denied that Lacey previously told her about the sexual abuse. Mother only recalled a time when Lacey was upset, and the stepfather told mother that he would not do "something like that" to Lacey. Mother eventually acknowledged that she hid in the children's closet because she wanted to know " 'what was going on' " and the stepfather never went in their room. She then claimed that she previously had Lacey call the police approximately four months earlier, but the police were "not answering calls at the time."

The results of Lacey's SART exam showed evidence consistent with sexual trauma. Lacey had also recalled seeing the stepfather enter the children's bedroom and rub Linda's vagina. Mother shared that she was concerned about having money to support the children. The social worker made contact with the children's father, U.T. (father), who had visits every other week based upon the parent's informal agreement. Father was not aware of the sexual abuse, and mother told him she did not know the reason the children were removed. Father believed the children would be "happy" with the mother as long the stepfather was not in the home.

On September 7, 2021, the agency filed original petitions alleging the children had been sexually abused by the stepfather and mother failed to adequately protect the children from the sexual abuse. At a continued detention hearing held September 14, 2021, the juvenile court ordered the children detained from mother and placed with father. The juvenile court set a jurisdiction and disposition hearing for October 22, 2021,

and it also ordered supervised visits twice per week for two hours between mother and the children.

The department's jurisdiction and disposition reports recommended that the allegations of each child's original petition be found true, the children be placed with father having sole legal and physical custody of the children, and dependency be terminated. During the department's investigation, mother questioned the children's credibility and asked for DNA test results to confirm that stepfather sexually abused the children. The department submitted a supplemental report, dated October 18, 2021, with information from law enforcement's investigation into the sexual abuse allegations.

The children remained in father's care and participated in phone calls with mother once or twice per day with no concerns noted. The police reports detailed mother's initial interview with law enforcement on the date the children were removed. Mother denied that Lacey ever disclosed that she was sexually abused by the stepfather. Instead, mother claimed Lacey told her that father's friend touched her inappropriately one year earlier. Mother admitted that she never called the police because she was attempting to gather more information. After further questioning, mother finally admitted that Lacey disclosed sexual abuse by the stepfather. Mother claimed she told the stepfather to stay away from Lacey, and she did not call the police because she wanted more proof that something was happening.

In an interview with the department social worker in October 2021, Lacey recanted her allegations against the stepfather. She now insisted that she was actually abused by the paternal grandfather. Lacey explained that she told this to her mother during their first visit, and mother disclosed that the paternal grandfather also sexually abused her when she was a child. The social worker noted that Lacey was not able to provide a clear explanation of this new version of events except that she saw the stepfather's face when the paternal grandfather was sexually abusing her.

4.

Lacey requested that a new investigation be started based upon the inconsistent information she provided to law enforcement. She was worried about going to jail because she knew lying was a " 'crime.' " Lacey became surprised when the social worker explained that the stepfather admitted to sexually abusing her, and she reported that the stepfather had a tendency to lie. Lacey stated that she wanted to return home to mother, and she continued to ask the social worker about the stepfather's criminal proceedings.

Linda enjoyed living with her father and confirmed that the stepfather was the only person who touched her inappropriately. Father reported that the children would have last seen their paternal grandfather when they were five or six years old. He also explained to the social worker that Lacey was distraught after her first phone call with mother, which lasted approximately one hour. Father recalled how Lacey informed him about mother begging her to get the social worker to get stepfather released from jail. Lacey had also told him about an incident where the stepfather previously threatened to kill Lacey. Father acknowledged that he would be supervising mother's phone calls with the children in the future, and he would download an application to monitor calls between mother and the children.

On October 24, 2021, Lacey was taken for a mental health evaluation after making suicidal threats. Father claimed Lacey became upset after a visit with mother the previous week, and Lacey did not want to talk to mother as often. Mother contacted the social worker on October 29, 2021, and asked why the children had not been returned home because Lacey identified someone else as her abuser. Mother did not understand why a new investigation had not been opened, and she repeatedly asked if the children would return home soon.

A contested jurisdiction and disposition hearing was eventually held February 15, 2022. In preparation for the hearing, the agency submitted another supplemental report, dated February 8, 2022. Mother had completed her parenting class, engaged in therapy,

and regularly attended her visits with the children. Mother was having appropriate conversations and no concerns were noted during visits. The children felt safe with their father, but Lacey wanted to know when she could return to her mother's care.

At the hearing, mother testified that she now believed that the stepfather sexually abused the children, and she would defend the children. Mother would not allow the stepfather back into her home if he was released from custody. She denied that she ever tried to influence the children to change their testimony or prevent them from testifying.

The department's counsel requested the petition be sustained and otherwise submitted on the reports as to disposition. Mother's counsel argued that either the petition should be dismissed or the children should be returned to mother on a plan of family maintenance. Father's counsel submitted on the recommendation, and the children's counsel submitted while noting Lacey's desires to be returned to mother's home because it was less restrictive than father's home.

In its ruling, the juvenile court sustained the failure to protect allegations of the petition by noting its belief that mother "just didn't want to believe it because he was the breadwinner and life was easier that way." It was hopeful that mother could get to a place where her home was safe and she would apologize for failing to believe the children. As to disposition, the juvenile court ordered the children removed from mother, placed them with father, granted father sole legal and physical custody of the children, and dismissed dependency.

The juvenile court also ordered mother to have visits with the children for two hours once every two weeks. Mother's visits were to be supervised as father deemed necessary. The juvenile court then proceeded to order that "once the [stepfather's] criminal proceedings have concluded, the father may have the discretion to allow unsupervised visits [with mother]." It explained its reasoning for the order as follows:

> "I don't want Mother trying to influence the girls with respect to their testimony or the criminal proceedings. But after the criminal proceedings with

[stepfather] are concluded, then [father] has the discretion to allow unsupervised contact between the girls and their mother, if he deems that to be in the children's best interest. [¶ ] And obviously, he should consider the progress the mother continues to make in counseling and the relationship the girls have with her. They will need to have a relationship with her."

Mother filed a timely notice of appeal on February 23, 2022.

## DISCUSSION

Mother does not challenge the juvenile court's decision to remove the children from her custody or terminate its jurisdiction. Instead, she challenges the visitation orders made on termination of jurisdiction. Mother contends the juvenile court abused its discretion by requiring mother's visits to remain supervised until the conclusion of the stepfather's criminal proceedings. She asks that we remand the matter to the family court for a hearing on the children's custody and visitation.

### A.    Legal Principles

Welfare and Institutions Code[1] section 362.4, subdivision (a), provides in part that "[i]f the juvenile court terminates its jurisdiction over a minor who has been adjudged a dependent child of the juvenile court prior to the minor's attainment of the age of 18 years, ... the juvenile court on its own motion, may issue ... an order determining the custody of, or visitation with, the child." This statute vests the juvenile court with broad discretionary authority to make custody and visitation orders when terminating dependency jurisdiction. (*In re Chantal S.* (1996) 13 Cal.4th 196, 203-204 (*Chantal S.*); *In re Roger S.* (1992) 4 Cal.App.4th 25, 30-31 (*Roger S.*).) Such orders are commonly referred to as "exit orders" and remain in effect until modified or terminated by the family law court. (*In re John W.* (1996) 41 Cal.App.4th 961, 970 (*John W.*).)

When deciding custody and visitation in any dependency case, the juvenile court's primary consideration must always be the best interests of the child. (*Chantal S.*, *supra*,

---

[1]    All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

13 Cal.4th at p. 206; *In re Nicholas H.* (2003) 112 Cal.App.4th 251, 268 (*Nicholas H.*); *In re Jennifer R.* (1993) 14 Cal.App.4th 704, 712 (*Jennifer R.*).) The juvenile court is not restrained by "any preferences or presumptions" in fashioning "exit orders" pursuant to section 362.4, therefore no specific finding is required to restrict visitation. (*Jennifer R.*, *supra*, 14 Cal.App.4th at pp. 712-713; *Nicholas H.*, *supra*, 112 Cal.App.4th at p. 268.) Instead, the court must be guided by the totality of the circumstances and issue orders that are in the child's best interests. (*Chantal S.*, *supra*, 13 Cal.4th at p. 201; *Roger S.*, *supra*, 4 Cal.App.4th at pp. 30-31.)

**B.      Standard of Review**

We review the juvenile court's custody and visitation orders for an abuse of discretion. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318 (*Stephanie M.*); *Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300; *In re Emmanuel R.* (2001) 94 Cal.App.4th 452, 465.) A court abuses its discretion when it exceeds the bounds of reason by making a decision that is arbitrary, capricious, or patently absurd. (*Stephanie M.*, *supra*, 7 Cal.4th at p. 318.) Under the abuse of discretion standard, when two or more inferences reasonably can be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court. (*Id.* at pp. 318, 319.)

**C.      Analysis**

Mother contends the juvenile court exceeded the scope of its jurisdiction when it conditioned her ability to have unsupervised contact with the children on the conclusion of the stepfather's criminal proceedings. We agree and remand the matter to the juvenile court with directions to change the visitation order to strike the improper condition it placed on mother's ability to have unsupervised contact with the children.

A juvenile court custody and visitation order, commonly referred to as an "exit order," is enforceable in family court. (*John W.*, *supra*, 41 Cal.App.4th at p. 970.) A finding that the parent from whom custody was removed no longer poses a risk of detriment or that the parent whose custody has been subject to supervision no longer

requires supervision is relevant to, but not necessarily determinative of, the best interests of the child. (*Nicholas H.*, *supra*, 112 Cal.App.4th at p. 268.) After the court has made an initial custody and visitation order, "the noncustodial parent seeking to alter the order for legal and physical custody can do so only on a showing that there has been a substantial change of circumstances so affecting the minor child that modification is essential to the child's welfare." (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 37 (*Burgess*); *F.T. v. L.J.* (2011) 194 Cal.App.4th 1, 14-15.)

The changed-circumstances rule provides that once the court has determined a particular custodial arrangement is in the best interests of the child, the court should preserve the established mode of custody unless some significant change in circumstances indicates that a different arrangement would be in the child's best interests. The rule promotes "the dual goals of judicial economy and protecting stable custody arrangements." (*Burchard v. Garay* (1986) 42 Cal.3d 531, 535.) Generally, a trial court abuses its discretion if there is no reasonable basis on which the court could conclude its decision advanced the best interests of the child. (*In re Marriage of Melville* (2004) 122 Cal.App.4th 601, 610; *Burgess*, *supra*, 13 Cal.4th at p. 32.)

In making custody and visitation orders on termination of dependency jurisdiction, the juvenile court may make collateral orders, such as counseling orders, that are reasonably related to the custody and visitation orders. (*Chantal S.*, *supra*, 13 Cal.4th at pp. 203-204.) Thus, a juvenile court may require a parent to attend counseling as a condition of visitation. (*Id.* at p. 204.) A juvenile court, however, may not attempt to preclude modification of a custody or visitation order by a family court after termination of dependency jurisdiction. (*John W.*, *supra*, 41 Cal.App.4th at p. 973.)

In the case of *John W.*, relied upon by mother, the appellate court concluded it was improper for a juvenile court to direct that its visitation order could not be modified for approximately 11 months, given the lesser standard applicable to an exit order and because the order was fundamentally inconsistent with the termination of jurisdiction.

9.

(*John W.*, *supra*, 41 Cal.App.4th at pp. 969, 973.) The court in *John W.* explained that "[b]y precluding modification for over 11 months, the juvenile court was treading into jurisdictional territory properly reserved for the family law courts[,]" adding that the order was essentially "an extension of juvenile court jurisdiction into the future when all basis for its jurisdiction had been terminated." (*Id.* at p. 973.)

We agree with mother that the juvenile court's order was erroneous. Although the intent behind the juvenile court's order was admirable, a condition that requires visitation to remain supervised based upon an event that is outside of the parent's control and for an undetermined period of time is "fundamentally inconsistent with the termination of jurisdiction." (*John W.*, *supra*, 41 Cal.App.4th at p. 973.) The juvenile court should have been well aware that the stepfather's criminal proceedings may not have come to a conclusion for years. If the juvenile court believed that unmonitored visitation was contrary to the children's best interests then it should have declined to provide any discretion for unmonitored visits in its orders. This would have at least allowed mother to request a modification in family court once a change of circumstances could be established.

Furthermore, a requirement that mother's visitation be limited to supervised for an unknown duration of time is contrary to its own acknowledgment that the children need to have a relationship with mother. The order is also inconsistent with the discretion it provided father to ensure visits were supervised as he deems necessary. The discretionary order directed to father appropriately allows for a consideration of mother's progress in counseling and her relationship with the children as the juvenile court suggested. The conditional order of an undetermined duration and based upon the occurrence of an event outside of the mother's control is inconsistent with the children's best interests and goes beyond the scope of the juvenile court's authority. We decline mother's invitation to remand the matter for a hearing on visitation and custody in the family court because no additional decisions regarding custody and visitation are required

10.

to remedy the juvenile court's error. Therefore, we remand the case to the juvenile court for correction of its visitation order. (*In re A.C.* (2011) 197 Cal.App.4th 796, 800; *In re T.H.* (2010) 190 Cal.App.4th 1119, 1124.)

## DISPOSITION

The juvenile court's dispositional order is conditionally reversed, and the matter is remanded to the juvenile court with directions to modify its visitation orders by striking the portion of its order stating, "after the criminal proceedings … have concluded." Once the visitation orders have been modified by the juvenile court to state, "[father] has the discretion to allow unsupervised contacts," it shall reinstate its exit orders without any additional changes. Any parent wishing to request further modifications of the exit orders must file their request in the family law court.

In all other respects, the February 15, 2022 jurisdictional and dispositional orders are affirmed.

SMITH, Acting P. J.

WE CONCUR:

MEEHAN, J.

SNAUFFER, J.

11.